UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| AMERICAN MODERN HOME INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 4:16 CV 215 CDP |
| AARON THOMAS, et al., | ) ) ) | |
| Defendants. | ) | |

# **MEMORANDUM AND ORDER**

There have been multiple discovery disputes in this action requiring me on several occasions to order counsel to appear in court to explain their positions. The pending motion to compel filed by defendants Aaron and Aimee Thomas is one such dispute. I held a hearing on the motion on August 1, 2017, and determined at that time to defer ruling on portions of the motion until I received additional information from the parties. Upon careful review of this additional information, I will grant the motion in part, deny it in part, and deny it as moot in part.

Earlier orders have set out the factual background of this case, and I will not repeat it here. The parties are well aware of how we got here. In short, plaintiff American Modern Home Insurance Company seeks a declaration that there is no coverage under a renters' insurance policy issued to defendants Aaron and Aimee Thomas on their claim for property damage caused by fire. In their counterclaim,

the Thomases raise claims of vexatious refusal to pay and intentional infliction of emotional distress.

In the motion to compel now at issue, the Thomases request that I order American Modern to respond and/or supplement its responses to numerous outstanding interrogatories and requests for production of documents. The Thomases also claim that American Modern improperly invoked the attorney-client and work product privileges to withhold certain documents from production. At the hearing on August 1, counsel for the Thomases represented that the only remaining disputes involve Interrogatory Nos. 5, 6, and 14 and Request Nos. 17, 18, 20, and 23, as well as American Modern's claims of privilege. I have since ruled on Request No. 23. Since the parties were able to resolve their dispute as to the other interrogatories and requests addressed in the motion, I will deny the motion as moot with respect to those other interrogatories and requests.

As to the interrogatories and requests that remain in dispute (that is, Interrogatory Nos. 5, 6, and 14 and Request Nos. 17, 18, and 20), the parties have jointly represented to the Court that they have agreed on the information American Modern would produce and in what form relating to the 72 renters' insurance fire claims made in Missouri from March 1, 2012, to March 1, 2017. While this time frame is more limited in scope than what was sought by the interrogatories and requests, it appears from the joint statement that the Thomases will review the

information produced and may seek to broaden this limited scope if the information is not useful. This is reasonable. I will therefore deny as moot the motion to compel to the extent it seeks responses to Interrogatory Nos. 5, 6, and 14 and Request Nos. 17, 18, and 20; but this denial is without prejudice to the Thomases to seek to compel additional information within the scope originally requested.

I turn now to the Thomases' claim that American Modern improperly invoked the attorney-client and/or work product privilege to withhold certain documents from production. The Thomases contend that the documents are part of their claims file and that they are entitled to the contents of their claims file *in toto*. Alternatively, they asked that I review the documents *in camera* to determine whether American Modern properly invoked the privileges, which I have done. For the following reasons, I do not find the Thomases to be entitled to the entirety of the challenged documents. Based upon my *in camera* review, however, I will order American Modern to produce some of the documents. The remaining documents are protected.

The Thomases first argue that they are entitled to the contents of the claims file without restriction given the Missouri Supreme Court's determination that because an insurer/insured relationship is analogous to an attorney/client relationship, the insurer's file belongs to the insured and not the insurer. *See Grewell v. State Farm Mut. Automobile Ins.*, 102 S.W.3d 33, 36-37 (Mo. banc

2003). While this Court recognizes this rule, *see, e.g., Fidelity Nat'l Title Ins. Co. v. Captiva Lake Invs., LLC*, No. 4:10-CV-1890 CEJ, 2012 WL 3562207, at *2 (E.D. Mo. Aug. 17, 2012); *Scottrade, Inc. v. The St. Paul Mercury Ins. Co.*, No. 4:09CV1855SNLJ, 2011 WL 572455, at *4 (E.D. Mo. Feb. 15, 2011); *Medical Protective Co. v. Bubenik*, No. 4:06CV01639 ERW, 2007 WL 3026939, at *2-3 (E.D. Mo. Oct. 15, 2007), it is not without limitation. For example, legal advice sought by the insurer regarding the insured's level of cooperation is not considered to be part of the insured's claims file and is therefore not the property of the insured. *See Medical Protective Co.*, 2007 WL 3026939, at *3. The attorney-client privilege can thus protect such communications. *Id.* Further, when a claims investigation shifts toward litigation, those parts of the claims file that are then created in anticipation of the litigation are subject to work product protection. *Id.*

Accordingly, I reject the Thomases' argument that neither the attorney-client privilege nor the work product privilege can apply to any part of their claims file with American Modern.

With respect to the specific claims of privilege, American Modern – as the party objecting to discovery on the basis of privilege – bears the burden of establishing the existence of privilege, whether it be attorney-client or work product. *Advanced Pain Ctrs. Poplar Bluff v. Ware*, 11 F. Supp. 3d 967 (E.D. Mo. 2014). If American Modern meets its burden with respect to attorney-client privilege, the

inquiry ends, given that the privilege is an absolute bar to production absent waiver. If American Modern shows the information is protected because it is work product, the Thomases may nevertheless obtain the discovery if they show a substantial need for the documents and that they cannot otherwise obtain the substantial equivalent of the materials without undue hardship. Fed. R. Civ. P. 26(b)(3)(A)(ii); *PepsiCo., Inc. v. Baird, Kurtz & Dobson LLP*, 305 F.3d 813, 817 (8th Cir. 2002).[1]

Attorney-Client Privilege

State law applies to claims of attorney-client privilege in diversity cases. *Baker v. General Motors Corp.*, 209 F.3d 1051, 1053 (8th Cir. 2000).

The privilege "protects 'any professionally-oriented communication between attorney and client regardless of whether it is made in anticipation of litigation or for preparation for trial.'" *Lloyd's Acceptance Corp. v. Affiliated FM Ins. Co.*, No. 4:05CV1934 DDN, 2012 WL 1389708, at *7 (E.D. Mo. Apr. 23, 2012) (quoting *State ex rel. Tillman v. Copeland*, 271 S.W.3d 42, 45 (Mo. Ct. App. 2008)).

> [W]here legal advice of any kind is sought from a professional legal advisor in his capacity as such, the communications relevant to that purpose, made in confidence by the client, are at his instance permanently protected from disclosure by himself or by the legal advisor except the protection be waived.

*Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 602 (8th Cir. 1977) (internal

---

[1] American Modern's privilege log also showed that American Modern withheld documents relating to reserve information because they were "irrelevant." American Modern has since produced these documents to the Thomases. (Pltf.'s Memo. of Compliance, ECF #127.) Therefore, I do not address in this Order this asserted basis for withholding these documents.

quotation marks and citation omitted). The privilege does not attach unless the communication is between parties bearing the relationship of attorney and client, is made to obtain legal services or advice, and involves the lawyer in his capacity as a lawyer – "not in some other capacity." *Id.; see also United States v. Spencer*, 700 F.3d 317, 320 (8th Cir. 2012); *Tillman*, 271 S.W.3d at 45. "A communication is not privileged simply because it is made by or to a person who happens to be a lawyer." *Diversified Indus.*, 572 F.2d at 602. "[T]he attorney-client privilege must be strictly construed because of the adverse effect of its application on the disclosure of truth." *Brackett v. St. Louis Bd. of Police Comm'rs*, No. 4:12-CV-898-JAR, 2014 WL 3451197, at *2 (E.D. Mo. July 15, 2014) (internal quotation marks and citation omitted).

Communications between a client's representatives regarding the decision to seek legal advice is not subject to the privilege if it is not a request directed to counsel for the purpose of obtaining such advice. *Olga Despotis Trust v. Cincinnati Ins. Co.*, No. 4:12CV02369 AGF, 2014 WL 3477310, at *3 (E.D. Mo. July 15, 2014). Nor does merely including counsel among the recipients of a document bring the document within the ambit of the attorney-client privilege; the document must be shared in furtherance of the client's solicitation of legal advice. *Lloyd's,* 2012 WL 1389708, at *7 (citing *Diversified Indus.,* 572 F.2d at 609; *Monsanto Co. & Monsanto Tech. LLC v. E.I. Du Pont de Nemours & Co.*, No.

4:09CV686 ERW, 2011 WL 4408184, at *2 (E.D. Mo. Sept. 22, 2011)).

Communications made by representatives of an insurer for the purpose of facilitating the rendition of legal services to the client are protected by the attorney-client privilege. *Navigators Mgt. Co. Inc. v. St. Paul Fire & Marine Ins. Co.*, No. 4:06CV1722 SNLJ, 2009 WL 465584, at *4 (E.D. Mo. Feb. 24, 2009). These include communications with in-house counsel as well as memorializing such communications. *Lloyds*, 2012 WL 1389708, at *7-8. Keeping in-house counsel apprised of the business activities of the insurer's adjuster, however, is not protected. *Id.* at *7; *see also Monsanto Co.*, 2011 WL 4408184, at *2 (the "attorney-client privilege does not cover client communications that relate only to business or technical data, where the client is not sharing that information in order to solicit legal advice"). Investigative reports are not privileged, even though they may be attached to or discussed in counsel communications. *State ex rel. Great Am. Ins. Co. v. Smith*, 574 S.W.2d 379, 385 (Mo. banc 1978); *Board of Registration for Healing Arts v. Spinden*, 798 S.W.2d 472, 476 (Mo. Ct. App. 1990). *See also Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981) (attorney-client privilege does not protect against disclosure of underlying facts).

To the extent American Modern contends that certain redacted portions of the challenged documents are protected by the attorney-client privilege, I have reviewed the documents *in camera* and find many redactions to contain communications

relating only to ordinary business activities (*e.g.*, diary entries updating status of obtaining records from insureds) and not made for the purpose of soliciting legal advice. Further, investigative reports, while attached to counsel communications, are not privileged. Accordingly, the following redactions from the challenged documents do not fall within the attorney-client parameters described above and are not so protected[2]:

a. Nos. 3-6: entirety of redactions

b. Nos. 10-11: entirety of redactions

c. No. 14: entirety of redaction

d. No. 16: entirety of redaction

e. No. 22: entirety of redaction

f. Nos. 24-25: entirety of redactions

g. No. 27: entirety of redaction

h. Attachment to No. 35: entirety of redaction

i. Attachment to No. 36: entirety of redaction

j. Attachment to No. 37: entirety of redaction

k. Attachment to No. 42: entirety of redaction

l. Attachment to No. 43: entirety of redaction

m. Attachment to No. 46: entirety of redaction

---

[2] The redactions are identified by the number listed on American Modern's updated privilege log (ECF #130-2).

The remaining redacted portions to which American Modern avers the privilege applies are protected given that they contain or memorialize communications between American Modern's representatives and legal counsel for the purpose of obtaining legal services and advice.

Work Product

Work product immunity is determined by federal law. *Baker,* 209 F.3d at 1053. Under Fed. R. Civ. P. 26, a party may not ordinarily discover documents prepared in anticipation of litigation by an opposing party unless the party seeking discovery shows that it has a substantial need for the materials and cannot, without undue hardship, obtain the substantial equivalent by other means. *Pepsico*, 305 F.3d at 817; *Baker*, 209 F.3d at 1054.

The question of whether a document was prepared in anticipation of litigation is a factual one, requiring evidence from which the Court can make a determination. Statements of counsel are not evidence. *Travelers Prop. Cas. Co. of Am. v. National Union Ins. Co. of Pittsburgh, PA*, 250 F.R.D. 421, 424 (W.D. Mo. 2008).

> [T]he test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation. But the converse of this is that even though litigation is already in prospect, there is no work product immunity for documents prepared in the regular course of business rather than for purposes of litigation.

*Simon v. G.D. Searle & Co.,* 816 F.2d 397, 401 (8th Cir. 1987). To be protected,

the documents must have been prepared after a "specific threat" of litigation became "palpable." That litigation was "merely a possibility" is insufficient. *Lloyd's,* 2012 WL 1389708, at *4.

In the insurance context, the Seventh Circuit has noted that much of the paperwork generated by insurance companies "is prepared with an eye toward a possible legal dispute over a claim[.]" *Logan v. Commercial Union Ins. Co.,* 96 F.3d 971, 977 (7th Cir. 1996). Because of this, "it is important to distinguish between 'an investigative report developed in the ordinary course of business' as a precaution for the 'remote prospect of litigation' and materials prepared *because* some 'articulable claim, likely to lead to litigation, . . . ha[s] arisen.'" *Id.* (quoting *Binks Mfg. Co. v. National Presto Indus., Inc.*, 709 F.2d 1109 (7th Cir. 1983)) (emphasis added). While an insurer's decision to decline coverage is usually the point at which the ordinary course of business ends and the anticipation of litigation begins, courts must consider the factual context of each case. *Lloyd's,* 2012 WL 1389708, at *4. Notably, in this case, American Modern has never denied the Thomases' claim.

Based upon my review of the record, litigation did not become palpable in this case until November 12, 2015. From the time of the fire to November 12, 2015, American Modern engaged in the ordinary course of business of investigating the Thomases' insurance claim. While it engaged legal counsel to assist in its

investigation and to make recommendations based on that investigation, the record shows that the question remained open until November 12, 2015, as to what course of action American Modern would take on the Thomases' claim. American Modern has not presented any argument or evidence demonstrating otherwise. I therefore find that documents prepared prior to November 12, 2015, were not prepared because of the likelihood of litigation and are not work product. Accordingly, to the extent the attorney-client privilege does not apply to redacted information contained in documents created prior to November 12, 2015, the information must be produced to the Thomases.

With respect to the redacted information dated November 12, 2015, and after that is not subject to the attorney-client privilege, my *in camera* review shows only Redaction No. 5 to be entitled to work product protection; the other portions, and specifically Redaction Nos. 3 and 4, were prepared in the ordinary course of business and not for purposes of litigation. *See United States Liab. Ins. Co. v. Global Acquisitions, LLC*, No. 4:14CV1887 RWS, 2016 WL 2594067, at *2 (E.D. Mo. May 5, 2016) (citing *Diversified Indus.*, 572 F.2d at 604). Whether or not a threat of litigation exists, an insurer's continued attempt to adjust a claim is part of its ordinary course of business. *Id.* Accordingly, the information contained in Redaction Nos. 3 and 4 are not protected by the work product privilege and must be produced to the Thomases.

Vexatious Refusal to Pay and Substantial Need

As previously stated, the Thomases may obtain the redacted portions of the challenged documents that are otherwise protected by the work product privilege if they show a substantial need for the redacted information and that they cannot obtain the substantial equivalent of the information without undue hardship.

There often is a substantial need for discovery of information in a claims file as it relates to a claim of vexatious refusal to pay. In *Logan,* the Seventh Circuit recognized that "allowing a plaintiff to overcome an insurer's work product privilege may be particularly appropriate in an action for bad faith, in light of the insurer's virtual monopoly over the evidence required to support an action." 96 F.3d at 977. "[T]he substantial need arises because the 'strategy, mental impressions[,] and opinion of the insurer's agents concerning the handling of the claim are directly at issue.'" *Lloyd's*, 2012 WL 1389708, at *5 (quoting *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992)). *See also Busch Props., Inc. v. National Union Fire Ins. Co. of Pittsburgh*, No. 4:12CV2318 SNLJ, 2014 WL 2815655, at *5 (E.D. Mo. June 23, 2014).

The mere pleading of vexatious refusal to pay, however, does not itself create a substantial need for an insurer's internal documents. Instead, the requesting party must demonstrate some likelihood or probability that the documents sought may contain evidence of bad faith. "The required showing is not a high hurdle, given

that the [party] can only speculate as to the documents' contents." *Lloyd's*, 2012 WL 1389708, at *6 (internal citations and quotation marks omitted). *See also United States Liab. Ins. Co.*, 2016 WL 2594067, at *3 (party need only show a possibility, not a certainty, that the documents contain evidence of bad faith).

The Thomases generally argue that all contents of the claims file must be produced and are not subject to any privilege – an assertion that I rejected above. Their otherwise bare assertion that they have a substantial need for the information given its relevance to their claim of vexatious refusal to pay is insufficient to invoke the exception to work product protection. While counsel's argument at the hearing gives me pause to question American Modern's conduct in this action, the Thomases have nevertheless failed to demonstrate some likelihood or probability that the protected documents here may contain evidence of bad faith. Moreover, they have not shown that they cannot obtain the desired information through any other means, including by deposition. *See United States Liab. Ins. Co.*, 2016 WL 2594067, at *3.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Aaron and Aimee Thomases' Motion to Compel [105] is granted in part, denied in part, and denied as moot in part as set out in this Memorandum and Order.

**IT IS FURTHER ORDERED** that no later than **September 18, 2017**, American Modern Home Insurance Company shall produce to the Thomases the

following portions of previously withheld documents, as denoted by their number listed on American Modern's updated privilege log (ECF #130-2):

    a.      Nos. 3-4:   entirety of redactions

    b.      No. 6:   entirety of redaction

    b.      Nos. 10-11:   entirety of redactions

    c.      No. 14:   entirety of redaction

    d.      No. 16:   entirety of redaction

    e.      No. 22:   entirety of redaction

    f.      Nos. 24-25:   entirety of redactions

    g.      No. 27:   entirety of redaction

    h.      Attachment to No. 35:   entirety of redaction

    i.      Attachment to No. 36:   entirety of redaction

    j.      Attachment to No. 37:   entirety of redaction

    k.      Attachment to No. 42:   entirety of redaction

    l.      Attachment to No. 43:   entirety of redaction

    m.      Attachment to No. 46:   entirety of redaction

*/s/ Catherine D. Perry*
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 11th day of September, 2017.