UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

AMERICAN MODERN HOME          )
INSURANCE COMPANY,            )
                             )
        Plaintiff,           )
                             )
    v.                       )          No. 4:16 CV 215 CDP
                             )
AARON THOMAS, et al.,        )
                             )
        Defendants.          )

## MEMORANDUM AND ORDER

On January 3, 2014, a fire occurred in Aaron and Aimee Thomas's

apartment.   The Thomases made a claim on their renter's insurance policy.   Their

insurer, American Modern Home Insurance Company, concluded very quickly that

there was evidence showing that the Thomases had set the fire themselves and had

made misrepresentations about the property destroyed in the fire, but American

Modern never denied the claim.   Instead, some 25 months after the fire and after

the Thomases' repeated inquiries, American Modern filed this declaratory

judgment suit, initially against the Thomases and the owner of the apartment

building, Thiemann Real Estate, LLC.   The case has a long and complicated

procedural history; eventually it went to trial before a jury on American Modern's

claim for declaratory judgment against the Thomases, on the Thomases'

counterclaim for coverage under the policy and vexatious refusal to pay, and on

Aimee Thomas's separate counterclaim for intentional infliction of emotional distress.

After a seven-day trial, the jury returned a verdict in the Thomases' favor on policy coverage and vexatious refusal to pay and awarded them a total of $21,153.11. The jury returned a verdict in American Modern's favor on Aimee Thomas's claim for intentional infliction of emotional distress. Under Fed. R. Civ. P. 50(b), American Modern renews its motion for judgment as a matter of law on the Thomases' claim for vexatious refusal to pay.[1] Alternatively, American Modern seeks a new trial on both its coverage claim and the vexatious refusal claim. I will deny the motion.

## Judgment as a Matter of Law

I denied American Modern's motion for judgment as a matter of law at the close of the Thomases' case and again at the close of all the evidence. Fed. R. Civ. P. 50(a). In its renewed motion for judgment as a matter of law, American

---

[1] American Modern's motion is confusing, because the motion's prayer for relief asks "2. That this Court enter Judgment as a Matter of Law *in favor of Plaintiff on its Complaint for Declaratory Judgment and on Defendants' Counterclaims for Breach of Contract* and Vexatious Refusal to Pay, or in the alternative, that this Court order a new trial on these claims." ECF 313 at p. 7 (emphasis added). Its arguments, however, only discuss the vexatious refusal claim. In any event, American Modern did not seek judgment as a matter of law on the coverage issue at any time before the case was submitted to the jury, and in the absence of a Rule 50(a) motion, it cannot file a "Renewed" motion under Rule 50(b) on the coverage issue. *Nassar v. Jackson,* 779 F.3d 547, 551 (8th Cir. 2015); *Vang v. Prataya*, No. 12-CV-1847(JNE/SER), 2017 WL 3732106 at *1 (D. Minn. Aug. 29, 2017). I therefore will consider the motion for judgment as a matter of law as directed only to the verdict against American Modern for vexatious refusal to pay.

Modern contends that it is entitled to judgment on the Thomases' claim for vexatious refusal to pay because there was no legally sufficient evidentiary basis upon which a jury could find either that American Modern's failure to pay the Thomases' insurance claim was without reasonable cause or excuse, or that American Modern's attitude in failing to pay the claim was vexatious and recalcitrant.

A motion for judgment as a matter of law should be granted only if the jury's verdict is utterly lacking in evidentiary support. *In re Prempro Prods. Liab. Litig.,* 586 F.3d 547, 571 (8th Cir. 2009). When deciding a Rule 50 motion, I must construe the evidence most favorably to the prevailing party and draw all inferences in its favor, denying the motion "if reasonable persons could differ as to the conclusions to be drawn from the evidence." *Western Am., Inc. v. Aetna Cas. & Sur. Co.,* 915 F.2d 1181, 1183 (8th Cir. 1990). I may not make credibility determinations or weigh the evidence. *In re Prempro,* 586 F.3d at 572 (citing *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000)). Under these standards, American Modern's motion must be denied.

To prevail on their claim of vexatious refusal to pay under Missouri law, the Thomases had to present sufficient evidence that American Modern refused to pay their claim without reasonable cause or excuse. *Nooter Corp. v. Allianz Underwriters Ins. Co.*, 536 S.W.3d 251, 294-95 (Mo. Ct. App. 2017). Evidence

of an insurer's vexatious and recalcitrant attitude supports the submission of such a claim as well as a jury's finding that the refusal to pay was without reasonable cause or excuse.  *Id.* at 295; *Hensley v. Shelter Mut. Ins. Co.*, 210 S.W.3d 455, 467 (Mo. Ct. App. 2007).  A vexatious and recalcitrant attitude can be shown by evidence of the insurer's delay or refusal to pay the claim, the inadequacy of its investigation of the claim, and the explanation given for its inaction on the claim. *See Hensley*, 210 S.W.3d at 465-66.

At the trial the jury heard testimony from American Modern's witnesses, which showed that they very quickly concluded that the fire was of incendiary origin.  The jury also heard Aimee Thomas's description about how the fire started after she covered a pot of oil for frying chicken and then, when she sometime later lifted the lid, the pot burst into flames.[2]  Additionally, the jury heard more than sufficient evidence that American Modern's attitude throughout its two-year, pre-lawsuit investigation – as well as during litigation – was vexatious and recalcitrant, thus supporting the jury's verdict that American Modern's refusal to pay the Thomases' claim was without reasonable cause or excuse.  When construed in favor of the Thomases, this evidence showed that the official fire investigation was flawed; that American Modern was unreasonable in relying on

---

[2] The jury specifically found that neither Aimee nor Aaron Thomas intentionally set the fire or directed that the fire be set.  (Verdict I, ECF 286.)

this flawed investigation; and that when American Modern joined in the investigation, the tactics used against the Thomases became abusive.

American Modern's vexatious conduct was evidenced in numerous ways. For example, it failed to notify the Thomases when their investigator, John Nordyke, inspected the site of the fire. Nordyke and Fire Marshall Dan Bruno conducted an interview of Aimee Thomas where they told her they knew she was lying and that the fire was intentionally set, and made veiled threats that she could be criminally prosecuted and would lose custody of her daughter if she did not confess to – or implicate her husband in – setting the fire. During that interview Bruno lied to Aimee by telling her that tests had shown the presence of an accelerant, and American Modern's investigator did nothing to expose that lie.

Evidence also showed that American Modern did not provide required forms to the Thomases for them to complete, and then used the Thomases' failure to timely complete these forms as a reason for its delay in investigating the claim. One of American Modern's agents told Aaron Thomas that he should ask the police for a copy of the police report, and then American Modern considered it suspicious that Aaron had asked the police for the report. Several of the Thomases' requests for information or updates, also considered by American Modern as suspicious, went unanswered. Indeed, contrary to industry standards and practices, months passed with no communication to the Thomases regarding

their claim and, when any intermittent communication did come, it was by way of form letters, which, as admitted by American Modern representatives, were sent without review of the claim file.   Despite the Thomases being told in these letters that the investigation was ongoing, evidence showed that no real investigation was actually occurring for months at a time and, indeed, at times no one at American Modern knew who was actually conducting the investigation or charged with that duty.   From October 2014 to February 2016, the only investigative activity going on was American Modern's requests to obtain the Thomases' financial and telephone records.   And the Thomases' insurance expert testified that several of these and other document requests to the Thomases were burdensome and abusive, and appeared intended to intimidate the Thomases.   Further, evidence also showed that throughout the entirety of its pre-suit investigation, although American Modern's investigator spoke to the Fire Marshall, he never sought to interview any police officers, firefighters, or other witnesses to the fire other than Aimee and Aaron.

After two years of this drawn-out investigation, American Modern filed a declaratory judgment action against the Thomases in February 2016.[3]   Evidence showed that American Modern knew that the litigation itself could possibly take

_____

[3]None of American Modern's witnesses could recall how the decision to sue was made or who actually made the final decision to file suit.

years to resolve and that the Thomases would most likely have to retain counsel. Although American Modern adduced testimony showing that it thought bringing a lawsuit against the Thomases would actually benefit them by speeding up resolution of their claim, the fact that it brought the lawsuit more than two years after the Thomases filed their claim – with knowledge that additional time would be eaten up with litigation – further supports the jury's finding of vexatious conduct.

I previously denied American Modern's motions for judgment as a matter of law on the issue of vexatious refusal at trial. Nothing presented at trial or by American Modern in its present motion changes my previous conclusion or serves as a basis for disturbing the jury's verdict. The jury's verdict here is certainly not without evidentiary support. Even if I were to construe the evidence in the light most favorable to American Modern (which, of course, is not the standard), I would conclude that reasonable persons could differ as to the conclusions to be drawn from that evidence. The renewed motion for judgment as a matter of law on the jury's finding of vexatious refusal to pay will be denied.

## Motion for New Trial

As alternative relief, American Modern seeks a new trial under Fed. R. Civ. P. 59(a)(1)(A), arguing that I made several evidentiary errors, errors relating to the admission and exclusion of expert testimony, and errors in the instructions given to

the jury. American Modern also argues that the jury's verdicts against it were against the great weight of the evidence.

Under Rule 59(a)(1)(A), "[a] new trial is appropriate when the first trial, through a verdict against the weight of the evidence, an excessive damage award, or legal errors at trial, resulted in a miscarriage of justice." *Gray v. Bicknell*, 86 F.3d 1472, 1480 (8th Cir. 1996). A miscarriage of justice does not result whenever there are inaccuracies or errors at trial; instead, the party seeking a new trial must demonstrate that there was prejudicial error. *Buchholz v. Rockwell Int'l Corp.*, 120 F.3d 146, 148 (8th Cir. 1997). A new trial based on errors in evidentiary rulings or in jury instructions will only be granted where the error likely affected the jury's verdict. *Diesel Mach., Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d 820, 823 (8th Cir. 2005) (evidentiary rulings); *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 720 (8th Cir. 2008) (jury instructions).

A. Weight of the Evidence

"[T]he prevention of injustice is the overriding principle in deciding whether to grant a new trial on the ground that the verdict was against the weight of the evidence." *Leichihman v. Pickwick Int'l,* 814 F.2d 1263, 1267 (8th Cir. 1987). "A motion for new trial is addressed to the judicial discretion of the district court and will not be reversed except for a clear abuse of that discretion." *Id.* at 1267-68. "The court should reject a jury's verdict only where, after a review of all the

evidence giving full respect to the jury's verdict, the court is left with a definite and firm conviction that the jury has erred." *Ryan v. McDonough Power Equip., Inc.*, 734 F.2d 385, 387 (8th Cir. 1984). Where reasonable minds can differ in evaluating the credible evidence, a new trial based on the weight of the evidence should not be granted. *Jacobs Mfg. Co. v. Sam Brown Co.*, 19 F.3d 1259, 1267 (8th Cir. 1994).

For the reasons stated above, the verdict was not against the weight of the evidence on the Thomases' claim of vexatious refusal to pay. The same is true for the jury's verdict on coverage.

The jury heard Aimee and Aaron's version of the events of the morning of the fire. They also heard from several of the first responders who testified that they did not smell any gasoline, and from one who testified that there was an overwhelming smell of grease. The Fire Marshall testified that he smelled gasoline and that another officer reported the same to him, but that officer testified that he remembered neither smelling gasoline or telling the Fire Marshall that he had; it was also not in his report and he indicated that he would have included it in the report if it had happened. Laboratory tests did not show any evidence of an accelerant, but the Fire Marshall admitted lying to Aimee by stating that evidence of an accelerant had been found. The jury heard lengthy cross-examination challenging Aimee's version of the fire and especially about the timing of the fire

and about where exactly Aaron was during the fire.[4]   The jury's finding that

neither Aimee nor Aaron had caused or solicited the fire was not against the clear

weight of the evidence.

American Modern also alleged that the Thomases could not recover because

they made false misrepresentations during the claims process about the property

that had been destroyed in the fire.   American Modern never provided a proof of

claim form, but instead its agent Adam Wolfe told Aimee Thomas to fill out a

"personal property statement."   This agent met Aimee at the apartment not long

after the fire and they walked through the apartment together.   He told her to list

everything in the apartment and to provide the prices they had paid for the

property, because everything had smoke or water damage.   The jury heard the

Thomases' testimony about the property and saw numerous photographs taken of

items in the apartment.   Although American Modern's witnesses testified that they

did not see everything listed on the personal property form and that the apartment

had been sparsely furnished, the jury had ample evidence to conclude otherwise.[5]

Based on all the evidence adduced at trial, and upon consideration of the

arguments of the parties, I do not find that the verdict against American Modern on

---

[4] The jury apparently did not find this evidence to be persuasive, although American Modern's
counsel spent a great deal of time on it.

[5] American Modern's witnesses were especially focused on the number of video games and
movies that were listed on the report, but they admitted that they did not open any of the boxes
shown in the photos, which the Thomases testified contained video games and movies.

policy coverage is against the clear weight of the evidence.   Nor am I convinced

that the jury erred in reaching this verdict.   To the contrary, this case involved

diametrically opposed evidence, "and it is the jury's function to choose between

plausible versions of the evidence."   *Jacobs Mfg.*, 19 F.3d at 1267.   The jury had

ample basis to reach the decision it did.   American Modern's motion for a new

trial based on the weight of the evidence is denied.

B.     Evidentiary Rulings

"An allegedly erroneous evidentiary ruling does not warrant a new trial

unless the evidence was so prejudicial that a new trial would likely produce a

different result."   *Burris v. Gulf Underwriters Ins. Co.*, 787 F.3d 875, 880 (8th Cir.

2015) (internal quotation marks and citation omitted).   Here, American Modern

argues that it is entitled to a new trial based on three allegedly erroneous

evidentiary rulings:   1) the exclusion of evidence of Aaron Thomas's criminal

conviction; 2) the exclusion of Detective Yount's testimony; and 3) the admission

of evidence of vexatious conduct that occurred after American Modern filed the

lawsuit.   Because I continue to believe that my rulings were correct, I will deny

the motion for new trial on these grounds for the same reasons upon which I based

my initial rulings.

First, as I explained during the pretrial conference, the only probative value

of Aaron Thomas's conviction in the circumstances of this case was the theory

under the Federal Rules of Evidence that someone who has been convicted of a crime is less likely to tell the truth. In this case, however, considering that the nature of the conviction would require the jurors to undergo additional voir dire regarding their ability to fairly consider the other evidence in the case; that Aaron had not been charged with any crime at the time American Modern was considering the claim; that the conviction was not yet final because of ongoing appellate proceedings and that explanation of the criminal process to the jury would likely lead to confusion; that Aimee Thomas would be unduly prejudiced by evidence of her husband's conviction; and that mere introduction of the fact of conviction without more would lead to speculation and confusion, I determined under Fed. R. Evid. 609(a)(1)(A) and 403 that the very limited probative value of this evidence was substantially outweighed by the risk of unfair prejudice, confusion of the issues, and undue delay. Nothing in American Modern's motion persuades me that this earlier ruling was incorrect or based on erroneous reasoning. This evidence was properly excluded.

With respect to Detective Yount, American Modern proffered that he would testify to an out-of-court statement made by Aimee Thomas's now-deceased mother, Pamela Alexander, that she attempted to call Aimee after the fire began to see if she was okay. Detective Yount took a photograph of Ms. Alexander's cell phone, which displayed a time stamp showing that a call from that phone was

made more than twenty minutes before Aimee called 911.   Although Ms.

Alexander was unavailable to testify at trial, I excluded this proffered testimony as

hearsay and rejected American Modern's argument that it was admissible under

Fed. R. Evid. 807.[6]   Even without this evidence, the jury heard lengthy and

complicated testimony, from a number of witnesses, about the timing of the fire

and the timing of both Aimee's conversations with her mother and Aaron's

whereabouts.   I did not err in this determination.

Rule 807's "residual hearsay exception [is] 'to be used very rarely, and only

in exceptional circumstances[.]'"   *United States v. Peneaux*, 432 F.3d 882, 893

(8th Cir. 2005) (quoting S. Rep. No. 1277, 93d Cong., 2d Sess., at 20 (1974)).

Accordingly, determining whether an out-of-court statement is the most probative

evidence and is necessary to properly develop an issue requires "careful scrutiny."

*United States v. W.B.*, 452 F.3d 1002, 1006 (8th Cir. 2006).   The proffered

testimony here did not pass this scrutiny.   At trial, American Modern challenged

the Thomases' timeline of events with testimony and evidence regarding when

---

[6] To admit an out-of-court statement under Rule 807, there must be a showing that:

> (1) the statement has equivalent circumstantial guarantees of trustworthiness [to
> the other hearsay exceptions]; (2) it is offered as evidence of a material fact; (3) it
> is more probative on the point for which it is offered than any other evidence that
> the proponent can obtain through reasonable efforts; and (4) admitting it will best
> serve the purposes of these rules and the interests of justice.

Fed. R. Evid. 807(a).

Aimee spoke on the phone with her mother, when the fire started, and how long the fire had burned before Aimee called 911. With the volume of evidence admitted at trial on this issue, Ms. Alexander's isolated hearsay statement was not necessary to develop American Modern's theory regarding this timeline. American Modern has simply failed to show that exceptional circumstances existed in this case to warrant the rare admission of hearsay statements under Rule 807, or that the admission of Detective Yount's testimony would have caused the jury to return a different verdict.

Finally, contrary to American Modern's assertion, conduct of the insurance company that occurred after the insurer filed suit is relevant to a claim of vexatious refusal to pay, especially in circumstances where the insurer's delay is at issue and such delay began before the filing of the suit.[7]  *Hunt v. United States Fire Ins. Co. of N. Y.*, 193 S.W.2d 778, 787-88 (Mo. Ct. App. 1946). *See also Hopkins v. American Econ. Ins. Co.*, 896 S.W.2d 933, 944 (Mo. Ct. App. 1995) ("issue of vexatious refusal is to be decided how the company responded from notice until trial"). I did not err in admitting such evidence in this case.

---

[7] One of American Modern's witnesses testified that it was American Modern's policy to *not deny* fire claims where they believed the fire was incendiary, but instead to just *not pay* the claim. Another testified that filing a lawsuit against the insured seeking a declaratory judgment was done for the benefit of the insured, despite the fact that this would require the insured to hire a lawyer and incur other expenses defending such a suit. This testimony makes the post-filing conduct even more probative.

C.    Expert Testimony

To the extent American Modern disagrees with my rulings on the admission and/or exclusion of certain expert testimony, I thoroughly set out the reasons for my rulings in my memorandum and order on the parties' respective *Daubert*[8] motions (*see* Memo. & Order, ECF 227) and reiterated those reasons during the final pretrial conference as well as during trial in response to American Modern's continued challenges to my rulings.[9]   Now, having had the opportunity to observe the testimony and evidence adduced at the trial of this case and to consider counsel's additional arguments made throughout trial regarding expert testimony, nothing in American Modern's motion persuades me that my earlier rulings were incorrect or based on erroneous reasoning.   I will therefore deny American Modern's motion for new trial on this basis.

D.    Jury Instructions

Finally, American Modern contends that I committed two errors with the jury instructions:   1) that I improperly defined "material" when instructing the jury on American Modern's claim that the Thomases mispresented material facts in

---

[8] *Daubert v. Merrill Dow Pharms., Inc.*, 509 U.S. 579 (1993).

[9] With respect to American Modern's proffered expert Carl Welcher, I made several rulings throughout the course of this litigation regarding his exclusion, with my first such ruling dating back to March 2017.   The circumstances surrounding that proposed witness are discussed in more detail in my Order on the motion for attorneys fees and motion for sanctions, which is entered separately today.

conjunction with their insurance claim, and 2) that I erred in giving a supplemental instruction defining vexatious refusal to pay.

1.    *Definition of "Material"*

During the first phase of the trial, the jury considered American Modern's claim that there was no policy coverage because the Thomases made material misrepresentations of fact relating to their insurance claim.   Regarding the definition of "material," I rejected American Modern's proposal to instruct the jury that a fact is material "if it had some bearing on the subject matter," or that a fact or circumstance is material "if it pertains to the facts that are relevant to the insurer's right to decide upon its obligations to protect itself against false claims." Instead, I gave the instruction proffered by the Thomases, which read:

> As used in these instructions, a misrepresentation is material if the fact misrepresented, if stated truthfully, would likely affect the conduct of those engaged in the insurance business acting reasonably and naturally, in accordance with the practice usual among such companies under such circumstances.

(ECF 288 at p. 8.)

To the extent American Modern argues that this definition of "material" applies only to alleged misrepresentations made in insurance applications as opposed to insurance claims, I disagree.   While the Missouri case from which this instruction came, *Mears v. Columbia Mut. Ins. Co.*, 855 S.W.2d 389 (Mo. Ct. App. 1993), was indeed an application case and not a claim case, the intent of a material

misrepresentation is the same, *i.e.*, to affect the conduct of the insurer in the circumstances. Whether those circumstances involve issuance of a policy or setting premium rates (as with an application case) or establishing whether or to what extent coverage applies to a particular incident (as with a claim case), if a representation is made with the understanding that it will affect the insurance company in making a decision, that representation is material.

I reject American Modern's argument that I should have given its proffered "some bearing on the subject matter" instruction because it was approved by a Missouri court and is appropriate here. First, I am not bound to give an identical instruction as one previously approved as long as the instruction that is given fairly and adequately sets forth the issue and applicable law. *United States v. Beckman*, 222 F.3d 512, 521 (8th Cir. 2000). I gave an instruction within these parameters. Moreover, the case American Modern relies on, *Hodge v. Continental W. Ins. Co.*, 722 S.W.2d 133 (Mo. Ct. App. 1986), is inapplicable to the circumstances of this case. In *Hodge*, the complaining party did not object to the proffered instruction at the time of trial, and did not tender any alternative definition of "material" for the trial court's consideration. Accordingly, the court of appeals found that that party was in no position to complain. *Id.* at 136. Here, the Thomases not only complained of American Modern's general instruction, but they provided an alternative definition of "material," which, for the reasons stated above, I

determined was an accurate statement of the law. While the *Hodge* court found that the general "some bearing on the subject matter" instruction was "adequate" in the circumstances of that case, *id.*, the situation here was vastly different. Given these vastly different circumstances, I did not err in rejecting American Modern's proffered instruction.

I also reject American Modern's argument that I should have applied Arkansas law and given the "pertains to the facts that are relevant" instruction. Missouri law clearly applied to the claims raised in this diversity case and, as discussed above, I gave an appropriate and accurate instruction under Missouri law.

### 2. *Supplemental Instruction*

American Modern also challenges the supplemental instruction I gave in response to the jury's questions during its phase-two deliberations on the Thomases' claim of vexatious refusal to pay. Instruction No. 7, the verdict director, instructed the jury that it may award a penalty to the Thomases if it found that "American Modern refused to pay the insurance claim without reasonable cause or excuse[.]" (ECF 294 at p. 7.) This quoted language was proffered by the Thomases in their proposed jury instructions (*see* ECF 234), and American Modern did not object. During its deliberations, the jury sent a note to the Court asking the following questions: 1) "Can we get an interpretation of refused to pay

the insurance claim of Aaron & Aimee Thomas <u>without reasonable cause or</u> <u>excuse</u>?" – and – 2) "Can we get a copy of the statue [sic] of vexatious?"   (ECF 293.)   (Emphasis in original note.)   Concerned that Instruction No. 7 as given was a misstatement of the law in the context of the evidence in this case, I called the jury back into the courtroom and gave the following supplemental instruction over American Modern's objection:   "Vexatious refusal may be found based on refusal to pay, denial of a claim, or delay, but only if that action was without reasonable cause or excuse."   (ECF 294 at p. 9.)   American Modern's claim of error involves my inclusion of "delay" in this instruction.

Jury instructions need not be "technically perfect," but they must fairly and adequately present the evidence and the applicable law to a jury.   *Friedman & Friedman, Ltd. v. Tim McCandless, Inc.*, 606 F.3d 494, 499 (8th Cir. 2010).   I have broad discretion in choosing the form and substance of jury instructions, *id.*, and in responding to a jury request for a supplemental instruction.   *United States v. Morrison*, 332 F.3d 530, 532 (8th Cir. 2003).   Answers given in a supplemental instruction must be within the specific limits of the question presented, and they must be accurate, clear, neutral, and non-prejudicial.   *Id.*

With the inclusion of "delay" in the supplemental instruction, American Modern argues that the instruction:   1) did not answer the precise question asked, that is, to interpret only the emphasized language; 2) caused it to suffer prejudice

because its closing argument used the language of Instruction 7, which did not include "delay" as a basis upon which to return a verdict for the Thomases; and 3) was not neutral because including the issue of "delay" supported the Thomases' entire argument of vexatious refusal.   For the following reasons, I did not err in giving this supplemental instruction.

First, I considered the jury's questions to be a request to clarify the definition of vexatious refusal to pay, especially since the jury asked for a copy of the statute.   In response to the questions, I gave a supplemental instruction that provided a clear and accurate statement of the law.   I did not give a copy of the statute to the jury.   Because the supplemental instruction provided an answer within the specific limits of the questions and cured an earlier misstatement of the law, American Modern's claimed error on this basis is denied.

With respect to prejudice, I disagree with American Modern's contention that the supplemental instruction undermined its closing argument.   In its closing argument, American Modern addressed at length the Thomases' theory of delay, arguing first that the jury could not consider the concept of "delay" in its deliberations; and second, that, regardless, any arguable delay was justified in this case.   As to the first argument, American Modern argued at its own risk that delay was irrelevant, given that delay *can* constitute vexatious refusal under the law and that overwhelming evidence showed such delay.   *See Hensley*, 210 S.W.3d at 465-

66; *Nationwide Affinity Ins. Co. of Am. v. Deimund*, No. 1:16CV298 ACL, 2018 WL 3159076, at *6 (E.D. Mo. June 28, 2018) (citing Missouri cases). As to the second argument, counsel emphasized to the jury that delays are to be expected in the insurance industry, stating that "[s]ometimes these things take time"; and, further, that delay instead of outright denial of an insurance claim is beneficial to insureds. Counsel also argued that the delay in this case was not due to American Modern's deliberate conduct but instead was caused by the Thomases themselves as well as the nature of the investigation. (ECF 346 at pp. 100-03.) Because American Modern was able to and did directly address the substance of the Thomases' "delay" argument in its own closing argument and argued the reasonableness of the delay in the circumstances of this case, it suffered no prejudice by the supplemental instruction that accurately stated the law to include "delay" within the definition of vexatious refusal to pay. *See Morrison*, 332 F.3d at 532-33; *see also United States v. Lueth*, 807 F.2d 719, 734 n.7 (8th Cir. 1986) (defendant did not contend that supplemental instruction misstated the law or misled the jury; nor did defendant's closing argument rely exclusively on the instruction as given before the clarifying instruction).

American Modern's contention that the supplemental instruction was not neutral is subsumed in its argument of prejudice. Nevertheless, given that the supplemental instruction provided an impartial and accurate statement of the law

and did not suggest that the jury should decide the case one way or another, the instruction was neutral and, as discussed above, did not prejudice American Modern.

Accordingly,

**IT IS HEREBY ORDERED** that American Modern Home Insurance Company's Renewed Motion for Judgment as a Matter of Law and, in the Alternative, Motion for New Trial [313] is **DENIED.**


CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 22nd day of August, 2019.