UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| AMERICAN MODERN HOME | ) | |
|---|---|---|
| INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:16 CV 215 CDP |
| | ) | |
| AARON THOMAS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM AND ORDER

Following a seven-day trial, a jury found that plaintiff American Modern Home Insurance Company's policy exclusions did not bar defendants Aaron and Aimee Thomas's insurance claim for property damage arising from a January 2014 apartment fire and, further, that American Modern vexatiously refused to pay the Thomases' claim. As part of the judgment entered on the jury's verdicts, the Thomases were awarded taxable costs from American Modern. The Thomases have submitted a bill of costs, seeking to recover costs totaling $85,606.17. American Modern objects to certain claimed costs. After careful consideration, I will tax costs in favor of the Thomases in the amount of **$24,948.89**.

Rule 54(d)(1) of the Federal Rules of Civil Procedure provides in pertinent part that "costs – other than attorneys' fees – should be allowed to the prevailing party" "[u]nless a federal statute, these rules, or a court order provides otherwise[.]"

The term "costs" as used in Rule 54(d)(1) is defined in 28 U.S.C. § 1920,[1] which enumerates the expenses that a federal court may tax as costs under the discretionary authority found in Rule 54(d). *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437 (1987); *see also Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 573 (2012). Not all expenses of litigation are costs taxable against the losing party, however, and within the statutory framework of costs eligible to be taxed, the Court has the discretion in determining and awarding costs in a given case. *Taniguchi*, 566 U.S. at 573; *Pershern v. Fiatallis N. Am., Inc.*, 834 F.2d 136, 140 (8th Cir. 1987).

Here, the Thomases seek to tax the following as costs: $320 for fees for service of subpoenas; $26,879.86 for deposition and court transcripts; $2,162.72 for witness fees; $20 for docket fees; and $56,223.59 for expert witness fees. American Modern makes specific objections to certain of the requested costs. I will address each objection in turn.

Fees for Service of Subpoenas

The Thomases request $320 in costs for service of trial subpoenas by a private

---

[1] 28 U.S.C. § 1920 states:

> A judge or clerk of any court of the United States may tax as costs the following: (1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

courier service. Section 1920 does not provide for the taxation of fees of private servers; rather, it provides only for the fees of the "clerk and marshal." 28 U.S.C. § 1920(1).

The fees of the marshal are explained in 28 U.S.C. § 1921, which provides for the United States Marshal to "routinely collect, *and a court may tax as costs*, fees for . . . [s]erving . . . summons, complaints, or any other writ, order or process in any case or proceeding . . . [or] a subpoena or summons for a witness or appraiser." 28 U.S.C. § 1921 (emphasis added). While the marshal no longer serves summons or subpoenas in most civil cases, § 1920(1) nevertheless limits recoverable service-of-process fees to those of the marshal. *See Cofield v. Crumpler*, 179 F.R.D. 510, 515-16 (E.D. Va. 1998). And relying on the clear language of § 1920(1) as well as Eighth Circuit precedent, *Crues v. KFC Corp.,* 768 F.2d 230, 234 (8th Cir. 1985), this court has repeatedly held that the fees of private process servers are not taxable as costs under 28 U.S.C. § 1920. *See Davis v. Lancaster*, No. 4:13CV1638 HEA, 2019 WL 265098, at *5 (E.D. Mo. Jan. 18, 2019); *Nationwide Affinity Ins. Co. of Am. v. Deimund*, No. 1:16CV298 ACL, 2018 WL 6570881, at *1 (E.D. Mo. Dec. 13, 2018); *Bry v. City of Frontenac, Mo*, No. 4:14-CV-1501 RLW, 2017 WL 244813, at *2 (E.D. Mo. Jan. 19, 2017).

I will therefore disallow the Thomases' requested fees of $320 for private service of subpoenas.

Deposition and Court Transcripts

American Modern challenges $1003.45 in requested costs for court transcripts the Thomases obtained during trial, arguing that fees for daily and real-time transcripts are considered to be for the convenience of counsel and not necessary for use in the case. In response, the Thomases aver that they did not order any real-time transcripts and that to the extent they ordered rough drafts of excerpts of the trial, they did so selectively for purposes of arguing motions to the court, impeaching witnesses, and making strategic decisions regarding the presentation of evidence and witness testimony. In view of the several motions in limine with complex and conditioned rulings, the need to address those rulings throughout the bifurcated trial, the fluid and ever-changing nature of the evidence adduced during trial both in substance and in presentation, and the contentiousness of this case in general, I find the Thomases' selective ordering of rough-draft portions of the trial transcript to be necessary for their use in the case for the reasons they cite. I will allow these transcript fees to be taxed as costs.

American Modern also challenges the Thomases' requested costs for court transcripts of motion hearings held before me on February 28, 2017, and August 1, 2017. I agree with the Thomases that the February 2017 transcript was necessary for use in the case. It was submitted as an exhibit to a motion in the case and, given the pivotal and significant issues addressed at that hearing, was cited on several occasions by counsel and the Court throughout the course of this litigation.

Contrary to American Modern's assertion, a transcript does not need to be necessary only for *trial* to be considered necessary for use in the case. *See Smith v. Tenet Healthsystem SL, Inc.*, 436 F.3d 879, 889 (8th Cir. 2006). I will therefore allow those costs to be taxed. As to the August 2017 transcript, the Thomases appear to concede to the reduction of the expedited portion of the fee, but they present no explanation or argument as to why that transcript was necessary for use in the case. I will therefore disallow the August 2017 court transcript fee of $242.50 in its entirety.

I will also disallow the $90 in ASCII fees for the depositions of Professor Jeffrey Thomas and Joseph Trawecki, as well as fees totaling $831.25 for the synchronization of deposition videos taken of Pamela Alexander, Lewis Crist, Adam Wolfe, Bill Heeb, and David McGuire. These fees were incurred for the convenience of counsel and not necessarily obtained for use in the case. *See Alternative Med. & Pharmacy, Inc. v. Express Scripts, Inc.*, No. 4:14 CV 1469 CDP, 2016 WL 3443574, at *2-3 (E.D. Mo. June 23, 2016).

American Modern also asks that I disallow fees *in toto* for the video depositions of Crist, Wolfe, Heeb, McGuire, John Nordyke, and Dan Bruno, arguing that both a printed transcript and video for these depositions were not necessary for use in the case.[1] In *Stanley v. Cottrell, Inc.*, 784 F.3d 454 (8th Cir. 2015), the

---

[1] American Modern does not challenge the costs sought for the printed transcripts.

Eighth Circuit held that "§ 1920(2) permits taxation of costs for both printed and electronically recorded transcripts of the same deposition as long as each transcript is necessarily obtained for use in a case." *Id.* at 467. The Thomases aver that Heeb and McGuire were both outside the subpoena power of the court and that the video deposition of each was necessary for presentation to the jury in the event they did not voluntarily appear at trial. Given the potential unavailability of these critical witnesses, I will allow the video costs of their depositions. *See Cowden v. BNSF Ry. Co.*, 991 F. Supp. 2d 1084, 1092 (E.D. Mo. 2014). I will also allow the costs for Nordyke's video deposition as the Thomases played it at trial as affirmative evidence. However, although the Thomases claim that clips from the other challenged video depositions were used at trial for impeachment purposes, only the printed transcripts were used to impeach Bruno, Wolfe, and Crist. A very short clip of Wolfe's video deposition was played, but that was to refresh his recollection. The printed deposition could have been used for that purpose. The video depositions of Bruno, Wolfe, and Crist were not necessary for use in the case. I will therefore disallow $2817.50, which represents the remaining video costs of their depositions.[2]

---

[2] I already deducted the video synchronization costs, which affected the remaining video costs for Wolfe's and Crist's depositions. In addition, the videographer combined the costs of Wolfe's deposition with Heeb's for billing purposes. *See* ECF 307 at p. 31. Because Wolfe's and Heeb's depositions were the same length (*see id.* at p. 30), I am disallowing half of the remaining costs. Accordingly, the breakdown of the allowable costs are as follows:

    Dan Bruno =    *$1235*;

Finally, I will allow the costs for obtaining the expedited transcripts of Bruno's August 25, 2017, deposition and Professor Thomas's December 29, 2017, deposition. As stated by the Thomases, Bruno walked out of his August 2017 deposition, prompting them to seek a continuance of relevant deadlines (ECF 135), as well as a court order for Bruno to complete the deposition (ECF 140). The latter motion was fully briefed, was submitted with excerpts of Bruno's transcribed deposition, and needed to be ruled quickly given the already-delayed deadlines in the case. Given the temporal proximity of Bruno's August 2017 deposition to the relevant deadlines, and that Bruno's conduct was what caused the need for the expedited transcript, taxing the costs for expedited production of the transcript is warranted here. *See Jo Ann Howard & Assocs., P.C. v. Cassity*, 146 F. Supp. 3d 1071, 1081 (E.D. Mo. 2015). It was also necessary for the Thomases to obtain an expedited transcript of Professor Thomas' deposition. Professor Thomas, the Thomases' insurance-industry expert, was deposed on December 29, 2017. Given the Court-ordered deadlines in place (*see* ECF 151), it was necessary for the Thomases to obtain the deposition transcript on an expedited basis in order to prepare for the deposition of American Modern's insurance-industry expert that was scheduled for January 22, 2018. In these circumstances, the temporal proximity warrants the cost associated with expedited production. *Jo Ann Howard*, 146 F.

---

      Lewis Crist =    *$1182.50* ($1357.50 - $175 (already disallowed sync));
      Adam Wolfe =  *$400* ($1250 - $450 (already disallowed sync) = $800); ($800/2 = $400).

- 7 -

Supp. 3d at 1081.

Witness Travel Expenses

American Modern asks that I limit the travel expenses of the Thomases' out-of-town witnesses, James Kuticka and Professor Thomas, to reflect only 100 miles of travel for each witness. Relying on *Linneman Constr., Inc. v. Montana-Dakota Utilities Co., Inc.*, 504 F.2d 1365 (8th Cir. 1974), and *Esler v. Safeway Stores, Inc.*, 77 F.R.D. 479 (W.D. Mo. 1978), American Modern contends that courts usually impose a 100-mile limit for witnesses outside the district in the absence of special circumstances. Although the Thomases argue that such special circumstances exist here, and I agree that they do for the reasons they state, I need not make that determination.

Section 1821 of title 28, which governs mileage and subsistence for witnesses, provides that "[a]ll normal travel expenses within and outside the judicial district shall be taxable as costs pursuant to section 1920 of this title." 28 U.S.C. § 1821(c)(4). This language was part of a Congressional rewrite of § 1821 in 1978, which was passed in order to cure the inequitable results of the then-present statute. *See* Pub. L. No. 95-535, 92 Stat 2033 (Oct. 27, 1978). The former language of the statute, which was in effect when *Linneman* and *Esler* were decided in 1974 and 1978, permitted "actual expenses of travel" only for witnesses who were "required to Travel between the Territories and possessions, or to and from the continental United States[.]" 28 U.S.C. § 1821 (1968). Finding that the statute yielded

inequitable results for witnesses traveling long distances and, further, did not "permit compensation for a variety of travel expenses which witnesses routinely incur," Congress passed the 1978 amendment to "provide compensation to witnesses for the actual expenses of travel and on the basis of the form of transportation actually used." H.R. Rep. No. 95-1651, 1978 U.S.C.C.A.N. 4631. The *Linneman* and *Esler* courts did not have the benefit of the new statute or Congress's reasoning when they imposed the 100-mile limit for out-of-town witnesses.

Accordingly, because § 1821(c)(4) dictates that all travel expenses shall be taxable as costs, I will permit all actual travel expenses of Kuticka and Professor Thomas that are sought by the Thomases and reimbursable under § 1821 to be taxed as costs to American Modern as follows[3]:

- James Kuticka –

    *Mileage*: The Thomases seek to tax $668.20 representing 1028 miles at a rate of $0.65 per mile. A review of Kuticka's time record shows this travel to be associated with Kuticka's appearance at trial in October 2018. (ECF 307 at pp. 276-77). Although mileage for this purpose is permitted, *see* 28 U.S.C. § 1821(a)(1), the 2018 rate prescribed by the Administrator of General Services, *see* 28 U.S.C. § 1821(c)(2), was $0.545 per mile and not $0.65. Therefore, I will tax $560.26 as mileage costs, representing 1028 miles of travel at the rate of $0.545 per mile.

    *Subsistence*: For the days of travel associated with Kuticka's appearance at trial in October 2018, I will permit the taxing of costs for lodging and

---

[3] Because it appears that the Thomases seek to tax only those travel expenses associated with Kuticka's and Professor Thomas's appearance at trial in October 2018 and not in relation to their respective depositions, I address only the trial-related expenses.

subsistence at the per diem rates requested by the Thomases and authorized under § 1821. I will therefore allow $108 in meal subsistence and $260 in lodging to be taxed as costs to American Modern.

*Total*: $928.26 will be taxed as costs for Kuticka's travel expenses as permitted under 28 U.S.C. § 1821.

- Professor Thomas –

    *Airfare:* The Thomases seek to tax as costs $424.56 for Professor Thomas's roundtrip airfare between Kansas City and St. Louis for trial in October 2018. The Thomases have submitted evidence of this actual cost (ECF 307 at pp. 264-69), and it will be allowed. 28 U.S.C. § 1821(c)(1).

    *Parking, Mileage, and Ground Transportation*: The Thomases seek to tax $24.50 in parking fees Professor Thomas paid at the Kansas City airport during the period he traveled to St. Louis for trial. No valid parking receipt is presented with the Thomases' bill. I will therefore disallow this cost. *See* 28 U.S.C. § 1821(c)(3). The Thomases also seek to tax mileage costs for 56 miles of private vehicle travel between Professor Thomas's office/residence and the Kansas City Airport. I will allow such mileage allowance at the 2018 rate of $0.545 per mile, for a total of $30.52. 28 U.S.C. § 1821(c)(2). I will also allow $66.20 in requested costs for taxicab and Uber fares Professor Thomas incurred during the period he traveled to St. Louis for trial. 28 U.S.C. § 1821(c)(3).

    *Subsistence*: For travel associated with Professor Thomas's appearance at trial in October 2018, I will permit the taxing of costs for lodging and subsistence at the per diem rates requested by the Thomases and authorized under § 1821. I will therefore allow $54 in meal subsistence and $130 in lodging to be taxed as costs to American Modern.

    *Total*: $705.28 will be taxed as costs for Professor Thomas's travel expenses as permitted under 28 U.S.C. § 1821.

Expert Witness Fees

Finally, to the extent the Thomases seek expert witness fees for Kuticka and

Professor Thomas in addition to the $40 per day allowance permitted under 28

- 10 -

U.S.C. § 1821(b), such fees will not be taxed as costs to American Modern.   Section 1920 does not authorize an award of costs for expert witness fees.  *Rimini St., Inc. v. Oracle USA, Inc.*, 139 S. Ct. 873, 878 (2019).

Accordingly,

**IT IS HEREBY ORDERED** that the requested fees and costs set out in Aaron and Aimee Thomas's motion for bill of costs [306] [307] [308] shall be allowed in part and disallowed in part in accordance with the findings set out above.

**IT IS FURTHER ORDERED** that the Clerk of Court shall tax the following costs against plaintiff American Modern Home Insurance Company and in favor of defendants Aaron and Aimee Thomas:

| | |
|---|---|
| Fees for Transcripts: | $22,898.61 |
| Fees for Witnesses: | $ 2030.28 |
| Docket Fees: | $     20.00 |
| **TOTAL:** | **$24,948.89.** |

*Catherine D. Perry*
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 22nd day of August, 2019.