UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| AMERICAN MODERN HOME | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  4:16 CV 215 CDP |
| | ) | |
| AARON THOMAS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This Memorandum and Order deals with the motions for attorney's fees and interest and the motion for sanctions.

A fire occurred in Aaron and Aimee Thomas's apartment on January 3, 2014. The Thomases made a claim on their renter's insurance policy, but their insurer, American Modern Home Insurance Company, never determined the claim. Instead, over two years later, American Modern brought this declaratory judgment action against the Thomases, seeking a declaration that there was no coverage under the policy.   After counsel was appointed for them, the Thomases filed a counterclaim, seeking a declaration that they were entitled to recover on the policy and, further, claiming that American Modern was vexatious in its refusal to pay the claim.   After a seven-day trial, a jury found in favor of the Thomases and awarded them $19,093.74 in damages on the policy-coverage claim and the maximum

statutory penalty available on the vexatious-refusal-to-pay claim, that is, $2059.37, for a total award of $21,153.11.   Aimee Thomas was not successful on a separate claim of intentional infliction of emotional distress.   As part of the judgment entered on the jury's verdicts, the Thomases were awarded their attorney's fees, as provided under Missouri's vexatious-refusal-to-pay statute.   At the conclusion of trial, a motion for sanctions filed by the Thomases during trial remained pending.

After careful consideration of the documentation submitted and the parties' respective positions on attorney's fees, I will award the Thomases attorney's fees in the amount of **$661,505** and will grant their request for prejudgment and post-judgment interest.   Although I find that American Modern engaged in sanctionable misconduct, I cannot impose a monetary sanction that is duplicative of the attorney's fee award and therefore must deny the motion for sanctions.

## I.   Motion for Attorney's Fees

I appointed attorneys Kenneth R. Heineman of Husch Blackwell LLP and Jonathan R. Waldron of Lathrop Gage LLP to represent the Thomases in this action. Through counsel, the Thomases seek to recover $992,267 in attorney's fees. American Modern objects, arguing that attorney's fees are not available to the Thomases.   In the alternative, American Modern challenges the amount of fees requested.

A.     Availability of Attorney's Fees

In a diversity action, state law governs the availability of attorney's fees where no conflicting federal statute or court rule applies. *Weitz Co. v. MH Washington*, 631 F.3d 510, 528 (8th Cir. 2011). In Missouri, attorney's fees are not recoverable from another party, except when allowed by contract or statute. *Trim Fit, LLC v. Dickey*, 607 F.3d 528, 532 (8th Cir. 2010) (citing *Essex Contracting, Inc. v. Jefferson Cty.*, 277 S.W.3d 647, 657 (Mo. banc 2009)). In cases where a party prevails against an insurance company on a claim of vexatious refusal to pay, attorney's fees are allowed to the prevailing party by statute. Specifically, Mo. Rev. Stat. § 375.420 provides:

> In any action against any insurance company to recover the amount of any loss under a policy of . . . insurance except automobile liability insurance, if it appears from the evidence that such company has refused to pay such loss without reasonable cause or excuse, the court or jury may, in addition to the amount thereof and interest, allow the plaintiff damages not to exceed twenty percent of the first fifteen hundred dollars of the loss, and ten percent of the amount of the loss in excess of fifteen hundred dollars *and a reasonable attorney's fee*; and the court shall enter judgment for the aggregate sum found in the verdict.

(Emphasis added.) Because the Thomases prevailed on their claim of vexatious refusal to pay against American Modern, an award of attorney's fees is available to them by statute. And the local rules of this Court provide that such statutorily-authorized fees are available in cases where appointed counsel represents the prevailing party. E.D. Mo. L.R. 12.06(C). *See also Walitalo v. Iacocca*, 968 F.2d 741, 747 (8th Cir. 1992) ("[T]here is certainly no error in shifting liability for

court-appointed counsel's fees to a defendant if the plaintiff obtains a judgment against it under a fee-shifting statute[.]").   American Modern argues, however, that despite the plain language of the Missouri statute and this Court's local rule, attorney's fees are not allowable in this case because counsel was appointed, thereby negating the need for the Thomases to recoup any personal expense for counsel. American Modern's argument is misguided.

A reasonable attorney's fee is based upon the value of counsel's services and is not limited to what a client agrees to or is able to pay.   *See O'Brien v. B.L.C. Ins. Co.*, 768 S.W.2d 64, 71 (Mo. banc 1989) (citing *Blanchard v. Bergeron*, 489 U.S. 87 (1989)).   This is particularly true in the circumstances of this case and especially upon consideration of § 375.420's purpose.

Missouri's vexatious-refusal-to-pay statute is penal in nature with its purpose being "to correct the evil of an arbitrary refusal for the sole purpose of delaying the plaintiff in the collection of his claim."   *Willis v. American Nat'l Life Ins. Co.*, 287 S.W.2d 98, 104 (Mo. Ct. App. 1956).   A penal statute must be strictly construed and will not be regarded as including anything "not within its letter."   *Id.* at 103-04 (quoting *State ex inf. Collins v. St. Louis & S.F.R. Co.*, 142 S.W. 279, 281 (Mo. 1911)).   Although American Modern argues that § 375.420's authorization for attorney's fees was not meant to apply to parties with appointed counsel since they, personally, are not out litigation expenses, the plain language of Missouri's

vexatious-refusal-to-pay statute allows a prevailing plaintiff a reasonable attorney's fee as part of the judgment, without qualification as to the nature of the attorney-client relationship. I will not regard the statute as limiting attorney's fees to privately-retained counsel only.

Further, allowing attorney's fees for appointed counsel in vexatious-refusal-to-pay cases generally and in this case particularly not only serves the purpose of the Missouri statute but also the overall interest of properly administering justice. Undertaking federal civil litigation is a time-consuming burden, which is one reason why courts infrequently ask lawyers to serve in civil matters. *See Ferguson v. Fleck*, 480 F. Supp. 219, 222 (W.D. Mo. 1979). It cannot seriously be disputed that meritorious claims generally benefit from the assistance of counsel; and where the monetary relief sought on a meritorious claim is substantial, private counsel is more likely to accept employment from a party. *Id.* But where the relief sought by an indigent party is not substantial, there is a greater likelihood that private counsel will not accept such employment – even on meritorious claims.

Here, the corpus of the policy-coverage claim was under $20,000. To prevail on the claim would bring little monetary relief and a less-than-substantial penalty under § 375.420's formula. The Thomases sought to retain private counsel to defend them against the insurance company's lawsuit, but they were unsuccessful in their efforts. Given that they alone could not investigate the case or hope to obtain

evidence to defend against the insurance company's allegations or prove their own, the appointment of counsel rendered them "equal justice at the bar" on their meritorious claims. *See Peterson v. Nadler*, 452 F.2d 754, 758 (8th Cir. 1971), *abrogated on other grounds by Mallard v. U.S. Dist. Court for S. Dist. of Iowa*, 490 U.S. 296 (1989). And I am grateful to counsel for accepting the appointment, which brought no guarantee of payment despite the time-consuming burden put upon them.

Given the purpose of § 375.420, its plain language that a prevailing plaintiff is allowed "a reasonable attorney's fee" as part of the judgment, and the plain language of Local Rule 12.06(C) of this Court permitting appointed counsel to recover statutorily-authorized fees, I conclude that the Thomases are entitled to an award of reasonable attorney's fees in this action.

B.     Legal Standard

I have broad discretion in determining the reasonableness of attorney's fees. *Selleck v. Keith M. Evans Ins., Inc.*, 535 S.W.3d 779, 786 (Mo. Ct. App. 2017). And my role as the trial judge in this case renders me an expert in determining a reasonable fee, given my familiarity with all of the issues in the case and with the character of the legal services rendered. *Terpstra v. State*, 565 S.W.3d 229, 249 (Mo. Ct. App. 2019).

The calculation of a reasonable fee begins with the lodestar amount, which is

"determined by multiplying the number of hours reasonably expended by a reasonable hourly rate in the community." *Berry v. Volkswagen Grp. of Am., Inc.*, 397 S.W.3d 425, 429 n.3 (Mo. banc 2013). I may adjust this amount upon consideration of several factors, including: 1) the rates customarily charged by the attorneys involved in the case and by other attorneys in the community for similar services; 2) the number of hours reasonably expended on the litigation; 3) the nature and character of the services rendered; 4) the degree of professional ability required; 5) the nature and importance of the subject matter; 6) the amount involved or the result obtained; and 7) the vigor of the opposition. *Id.* at 431; *see also Weitz Co.*, 631 F.3d at 528-29 (considering factors under state law when determining reasonable attorney's fees in diversity action).

C.  Discussion

Employing the lodestar method, the Thomases seek an award of attorney's fees totaling $992,267, which represents 2257.1 hours of work performed by three attorneys, a paralegal, and a litigation support clerk at the law firm of Lathrop Gage LLC; and 837.7 hours of work performed by eight attorneys and a paralegal at the law firm of Husch Blackwell LLP. American Modern objects to the requested fees on several bases, which I will address in turn.

1.  *Relation to Actual Damages*

The Thomases sought and recovered the amount they claimed under their

insurance policy, $19,093.74, and the maximum amount of the statutorily-prescribed penalty for American Modern's vexatious refusal to pay the claim, $2059.37, for a total monetary judgment of $21,153.11.

American Modern argues that large attorney-fee awards on vexatious-refusal-to-pay claims usually result from large damage awards and, further, that attorney-fee awards that exceed actual-damage awards on such claims "typically" are in the range of 300 to 400 percent of the damages awarded. Given the relatively low damages awarded here, American Modern contends that the requested fee award should be reduced to bring it in line with the Thomases' actual damages and with other vexatious-refusal-to-pay cases. In the particular circumstances of this case, I disagree.

First, the Missouri Supreme Court has noted that the amount of the verdict or judgment may have little bearing on the amount of the fee award in cases where the applicable fee-shifting statute was promulgated by the legislature to protect the public from harm. *Berry*, 397 S.W.3d at 431 (quoting *Gilliland v. Missouri Athletic Club,* 273 S.W.3d 516, 523 (Mo. banc 2009) (en banc)). The Missouri legislature enacted the statute under which the Thomases prevailed "to correct the *evil* of an arbitrary refusal for the sole purpose of delaying the plaintiff in the collection of his claim." *Willis*, 287 S.W.2d at 104 (emphasis added). The Thomases were awarded the maximum amount of damages that were allowable under the law. The

fact that the monetary value of their claim was less than substantial does not lessen the evil the statute seeks to correct.

Moreover, having presided over this case for over three years, I agree with the Thomases that American Modern – from the very beginning – heavily and fiercely litigated the action despite the relatively small monetary value of the claim at issue. The Thomases had no choice but to meet American Modern's intensity, whether it be preparing for and defending dozens of depositions; litigating several (and in some instances repeated) discovery disputes that, as discussed more fully below, were necessitated by American Modern's gamesmanship and hide-the-ball tactics; preparing for and attending court-ordered hearings; and briefing several summary judgment and *Daubert* motions. American Modern supersized its litigation tactics in what has always been a low damages case. To require the Thomases to downsize their efforts in response to these tactics is unreasonable.

Given the purpose of the statute under which the Thomases prevailed, I will give little regard to the amount of the verdict in considering a reasonable attorney's fee allowable to the Thomases under the statute.

2.    *Hourly Rate*

"When determining reasonable hourly rates, district courts may rely on their own experience and knowledge of prevailing market rates." *Bryant v. Jeffrey Sand Co.*, 919 F.3d 520, 529 (8th Cir. 2019).

Several attorneys and paralegals billed at different rates in this case. With respect to Husch Blackwell's hourly rates, partner Brandon Mueller billed at $430 per hour and partner/of counsel Kenneth Heineman billed at $450 per hour. Husch Blackwell associates billed at rates ranging from $250 to $355 per hour, and the paralegal billed at $225 per hour. Lathrop Gage records show that attorney Jonathan Waldron billed at $355 per hour, which is discounted from what he charges other clients. Attorneys Chandler Carr and Kevin McKenzie likewise billed at a discounted rate of $220 and $280 per hour, respectively. And paralegal Amy Beck's rate is discounted at $205 per hour. Litigation specialist Tracy Pace billed at $140 per hour.

Based on my general familiarity with rates charged by attorneys in St. Louis, my experience in fee disputes, and my review of the relevant lists of attorney billing rates in the *Missouri Lawyer's Weekly*, I find that the rates charged by counsel and legal staff in this case are reasonable and well in line with rates charged by other attorneys in St. Louis for similar services. I also find these rates reasonable given the nature and character of the services provided by counsel, their expertise and performance, and the successful results they obtained in this case. Because the rates charged are commensurate with the prevailing rates of St. Louis attorneys during the time periods in question, I will not reduce them to $300 per hour as

requested by American Modern.[1]

3.    *Non-Appointed Counsel*

American Modern argues that I should not award attorney's fees for work performed by anyone other than the two appointed lawyers in this case, Kenneth Heineman and Jonathan Waldron.   I disagree.

As discussed above, Missouri's vexatious-refusal-to-pay statute allows a prevailing plaintiff a reasonable attorney's fee as part of the judgment without qualification as to the nature of the attorney-client relationship.   While that alone should end the discussion, the billing records show that to meet their obligations to their clients and to the Court, and to meet the seemingly unending demands caused by American Modern's scorched earth approach to this litigation, appointed counsel engaged in a cost-efficient strategy by tapping into resources available to them at much lower billing rates than their own.   I agree with counsel's representation that this strategy was likely more efficient – and thus more economically feasible – in the particular circumstances of this case.

4.    *Excessive and Duplicate Entries*

American Modern argues that counsel's billing records (which it claims are largely block-billed) are vague and/or show that counsel engaged in duplicative

---

[1] American Modern does not specify whose rates should be reduced to $300.   Several rates are already below $300, including those of attorneys.   And if I were to "blend" the rates, the average rate for the total hours billed would be $320 per hour.

efforts and billed excessive hours for the work performed. American Modern cites to only a few specific instances of this alleged billing conduct but avers that there are several other instances contained in the billing records. American Modern asks me to exclude all of counsel's flawed entries and reduce the requested fees accordingly.

"The term 'block billing' refers to the time keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Bishop v. Pennington Cty.*, No. CIV. 06-5066-KES, 2009 WL 1364887, at *3-4 (D.S.D. May 14, 2009) (quoting *McDannel v. Apfel*, 78 F. Supp. 2d 944, 946 n.1 (S.D. Iowa 1999)). Although the Eighth Circuit does not prohibit block billing, district courts are authorized to apply a percentage reduction for inadequate documentation that hinders the court's ability to conduct a meaningful review. *Id.*; *see also Miller v. Woodharbor Molding & Millworks, Inc.,* 174 F.3d 948, 949-50 (8th Cir. 1999) (per curiam) (remanding to district court to request more detail or apply percentage reduction based on vague billing entries).

Several entries in counsel's billing records combine several tasks in one entry. Although the tasks themselves are sufficiently detailed within the entry, the specific billable time spent on each task is not identified. This is significant because only those fees for work performed to recover the Thomases' loss due under the policy

are recoverable under § 375.420.  *Willis*, 287 S.W.2d at 107.[2]   Although the

descriptions in the billing entries are detailed, I am unable to discern what amount of

time was spent on the insurance issues, for which attorney's fees are recoverable

under § 375.420 – as opposed to issues involving the tort of intentional infliction of

emotional distress, an unsuccessful claim and an issue for which the statute does not

allow attorney's fees.   I am permitted to reduce the requested fees by a percentage

in such circumstances, *Miller*, 174 F.3d at 950, and will do so here.

I also agree with American Modern that some entries are too vague to discern

what work was performed and on what issues.   For instance, there are several

one-line entries documenting "review notice of deadline," or "court deadline," or

"court notice."   Other entries show duplicative efforts, such as more than one

attorney attending depositions or an associate attending trial every day, sitting in the

gallery, and not participating in the trial.[3]   Although the Thomases contend that this

associate assisted with strategy, motions, and research while sitting in the courtroom

gallery, I nevertheless find it unnecessary and duplicative given the presence and

active participation of two other attorneys at trial.   *See Kline v. City of Kansas City,

Mo., Fire Dep't*, 245 F.3d 707, 709 (8th Cir. 2001) (affirming reduction of fees for

"overlawyering"); *A.J. ex rel. L.B. v. Kierst*, 56 F.3d 849, 864 (8th Cir. 1995) ("A

---

[2]  Notably, "a reasonable attorney's fee" under § 375.420 includes those fees reasonably incurred on appeal defending the judgment obtained in the trial court.   *See Merseal v. Farm Bureau Town & Country Ins. Co. of Mo.*, 396 S.W.3d 467, 475 (Mo. Ct. App. 2013).
[3]   The examples I cite are meant to be illustrative and not exhaustive.

court may reduce attorney hours, and consequently fees, for inefficiency or duplication of services in cases where more than one attorney is used.").   Instead of making a line-by-line determination of vague entries or excessive or duplicative work from the 162 pages of billing records submitted, I will exercise my discretion and make a percentage reduction of the requested fees.   *See Ladd v. Pickering*, 783 F. Supp. 2d 1079, 1095 (E.D. Mo. 2011).

     5.    *Clerical Work*

Finally, I agree with American Modern that the fees charged in counsel's billings records for the performance of clerical tasks – such as calendaring dates, ordering copies, forwarding invoices, moving boxes, and making travel arrangements – are not recoverable as attorney's fees.   *See Ladd*, 783 F. Supp. 2d at 1094.   I will consider this circumstance in making my percentage reduction of fees. *See id.* at 1095.

D.    <u>Conclusion and Calculation of Fees</u>

Employing the lodestar method, the Thomases seek an award of attorney's fees totaling $992,267, which represents 2257.1 hours of work performed at the various rates described above.   For the reasons stated, I find that the hourly rates are reasonable, being mindful that some rates were discounted for this case and that some hours were not billed.

I have also considered the *Berry* factors in determining a reasonable fee.   The

intensive and contentious nature of this case required counsel to not only devote a substantial amount of time to the matter, but to exercise a measured and admirable degree of professionalism toward their clients, opposing counsel, and this Court in very challenging circumstances. Counsel achieved full and complete results for the Thomases on the insurance-related claims, recovering the full amount of their claim made under the policy as well as the maximum penalty allowed under § 375.420 for American Modern's vexatious refusal to pay the claim. *See Hensley v. Eckerhart*, 461 U.S. 424 434 (the most important factor is the results obtained). As explained above, although some may view the monetary amount as insubstantial, that has little bearing on the fee award given the nature of the case and the interests protected by the relevant statute. Finally, the vigor of the opposition cannot be understated. Nothing was easy about this case. Roadblocks were thrown up at nearly every turn. Several issues were litigated (and re-litigated) throughout the three-year history of the case. American Modern made this more difficult than it needed to be. On several occasions, its counsel was not forthcoming or forthright with the Thomases or with the Court, and this conduct required additional time, additional work, and a great expenditure of resources, which is reflected in counsel's billing records. For these reasons, a fully compensable fee is warranted.

Upon consideration of the other factors, however – that is, work performed on non-recoverable issues, vague billing entries, excessive and duplicative work, and

the performance of and billing for clerical tasks – I will reduce the requested lodestar amount by one-third and award the Thomases a reasonable attorney's fee of $661,505. This amount reflects the nature of the work performed by counsel, the professional abilities required of them, and their complete success on the most significant issues in the case and for which attorney's fees are available under § 375.420.

Accordingly, I will grant in part and deny in part the Thomases' motion for attorney's fees and will enter judgment under Mo. Rev. Stat. § 375.420 for attorney's fees in the amount of $661,505.

## II. Prejudgment and Post-Judgment Interest

American Modern does not dispute that the Thomases are entitled to recover post-judgment interest, and this accrues as a matter of law on all money judgments in federal court. Under 28 U.S.C. § 1961, interest is allowed "on any money judgment in a civil case recovered in district court . . . at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." Although the Thomases seek a rate of 9% per annum as provided under Mo. Rev. Stat. § 408.040, the rate prescribed under § 1961 applies to federal actions brought in diversity. *See Mobil Exploration & Producing N. Am., Inc. v. Graham Royalty Ltd.*, 910 F.2d 504, 509 (8th Cir. 1990); *see also H&R Block Tax*

*Servs. LLC v. Clayton*, No. 16-CV-00185, 2016 WL 9023018, at *4 (W.D. Mo. Dec. 12, 2016). Accordingly, American Modern shall pay post-judgment interest accruing on the amount of the October 17, 2018, judgment ($21,153.11) from the date of said judgment until paid in full, at the rate of 2.67% per annum, which is the rate applicable on the date this judgment was entered.[4]

With respect to prejudgment interest, Mo. Rev. Stat. § 408.020 provides: "Creditors shall be allowed to receive interest at the rate of nine percent per annum, when no other rate is agreed upon, for all moneys after they become due and payable, on written contracts, . . . and demand of payment is made[.]" Missouri courts award prejudgment interest if three elements are met: "(1) the expenses must be due; (2) the claim must be liquidated or the amount of the claim reasonably ascertainable; and (3) the obligee must make a demand on the obligor for the amount due." *Jablonski v. Barton Mut. Ins. Co.*, 291 S.W.3d 345, 350 (Mo. Ct. App. 2009). "'Interest has traditionally been used to compensate for the use of or loss of use of money to which a person is entitled.'" *Travelers Prop. Cas. Ins. Co. of Am. v. Nat'l Union Ins. Co. of Pittsburgh, Pa.*, 735 F.3d 993, 1004-05 (8th Cir. 2013) (quoting *Catron v. Columbia Mut. Ins. Co.*, 723 S.W.2d 5, 7 (Mo. banc 1987)). "The denial of prejudgment interest for unliquidated claims 'is based, generally, on the idea that where the person liable does not know the amount he owes he should not be

---

[4] United States District Court, Eastern District of Missouri, *Post Judgment Interest Rate,* https://www.moed.uscourts.gov/post-judgment-interest-rate.

considered in default because of failure to pay.'" *Barkley, Inc. v. Gabriel Bros., Inc.*, 829 F.3d 1030, 1039 (8th Cir. 2016) (quoting *Fohn v. Title Ins. Corp. of St. Louis*, 529 S.W.2d 1, 5 (Mo. banc 1975)).

American Modern contends that the Thomases are not entitled to prejudgment interest because the value of the insured property was disputed and there existed a question of arson, thereby rendering the recoverable policy amount at issue in this case unliquidated.   This argument, however, is not supported by the current state of Missouri law.

"The mere fact that a party denies liability or defends a claim against him [or her], or even the existence of a bona fide dispute as to the amount of the indebtedness, does not preclude recovery of interest[.]" *Comens v. SSM St. Charles Clinic Med. Grp., Inc.*, 335 S.W.3d 76, 82 (Mo. Ct. App. 2011) (internal quotation marks and citations omitted).   "To hold otherwise would allow [the opposing party] to accrue pecuniary benefit unfairly by the simple expedient of producing conflicting estimates of value." *Id.* (internal quotation marks and citations omitted).   Where the parties dispute liability but the amount of damages was readily determinable and ascertainable, Missouri courts consider the damages to be liquidated and grant prejudgment interest thereon.   *Barkley, Inc.*, 829 F.3d at 1040 (citing *Watters v. Travel Guard Int'l*, 136 S.W.3d 100, 104-05 (Mo. Ct. App. 2004); *Travelers Prop. Cas. Ins. Co. of Am.*, 735 F.3d at 1006-07)).   *See also Macheca*

*Transp. Co. v. Philadelphia Indem. Ins. Co.*, 737 F.3d 1188, 1197 (8th Cir. 2013) (applying Missouri law) (where damages were calculable upon the property loss and the proper measure of damages was not in dispute, prejudgment interest was warranted on property damage claim). "In such a situation, a dispute over the actual amount owed should not preclude an award of prejudgment interest." *Id.* (citing *Comens,* 335 S.W.3d at 82).

Here, on March 12, 2014, American Modern valued the Thomases' net claim under the insurance policy at $19,093.74, which is all the Thomases sought to recover and the exact amount the jury ultimately awarded them. There was no uncertainty about the amount of the claim when American Modern itself valued it; nor was there any dispute about the method used for calculating the amount. The only dispute was whether American Modern was *liable* to pay this otherwise determinable and ascertainable claim. The policy-claim damages were therefore liquidated, and the Thomases are entitled to prejudgment interest thereon. *Barkley, Inc.*, 829 F.3d at 1040; *Travelers Prop. Cas. Ins. Co. of Am.*, 735 F.3d at 1006-07; *Macheca Transp. Co.*, 737 F.3d at 1197; *Watters*, 136 S.W.3d at 112 ("The award of prejudgment interest in a case in which section 408.020 is applicable is not a matter of court discretion; it is compelled.").

In a diversity action, state law governs prejudgment interest. *Emmenegger v. Bull Moose Tube Co.*, 324 F.3d 616, 625-26 (8th Cir. 2003); *Happy Chef Sys., Inc. v.*

*John Hancock Mut. Life Ins. Co.*, 933 F.2d 1433, 1435 (8th Cir. 1991).    Section

408.020 of the Missouri Revised Statutes provides for prejudgment interest at 9%

per annum for liquidated claims after the demand for payment is made.    *See Happy*

*Chef*, 933 F.2d at 1436 (successful litigant in diversity case entitled to interest at rate

determined by state law).    I will order American Modern to pay to the Thomases

prejudgment interest on their policy-claim damages ($19,093.74) at the rate of 9%

per annum from March 12, 2014, to the date of judgment on the claim, October 17,

2018, which amounts to $7909.52.    *Emmenegger*, 324 F.3d at 625.    Post-judgment

interest will accrue on this amount at the rate prescribed by 28 U.S.C. § 1961

beginning with the entry of the amended judgment.    *Travelers Prop. Cas. Ins. Co.*

*of Am.,* 735 F.3d at 1008 (post-judgment interest accrues on judgment for

prejudgment interest); *Happy Chef*, 933 F.2d at 1436 (federal rate applies to

post-judgment interest).

### III.   Motion for Sanctions

On the last day of trial, the Thomases moved for me to exercise my inherent

authority to impose sanctions against American Modern, arguing that American

Modern had made repeated misrepresentations to the Court and to counsel dating

back to early 2017, as well as to the jury during trial.    I denied the specific relief

requested in the motion, namely, to strike American Modern's defenses or to

preclude its insurance expert from testifying; but I took the motion under submission

to consider whether less onerous sanctions were appropriate.    As follow up, the Thomases suggested that I award them their expert witness fees (approximately $56,224) "because they were likely increased as a result of [American Modern's] misconduct" and, further, because such sanction would "discourage this type of behavior in future cases."   (ECF 304 at p. 9.)

I have thoroughly and carefully considered American Modern's and its counsel's conduct throughout the entirety of this litigation and agree that their misconduct and deceitful practices abused the judicial process, unnecessarily prolonged this case, and had the potential to do a disservice to justice.   However, under my inherent authority, I may impose as sanctions only those costs or fees that the Thomases "incurred solely because of the misconduct – or put another way, [] the fees [they] would not have incurred but for the bad faith."   *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1184 (2017).   I may not impose an additional amount as punishment for American Modern's bad behavior unless I "provide procedural guarantees applicable in criminal cases, such as a 'beyond a reasonable doubt' standard of proof."   *Id.* at 1186.   If a sanction award extends to fees or costs that would have been incurred without the misconduct, it crosses the boundary from compensation to punishment.   *Id.*

Here, while the Thomases claim that their expert witness fees were "likely increased" because of American Modern's misconduct, they do not point to any

specific fees that they would not have paid "but for" the misconduct.   Given the

nature of the claims in this litigation, the Thomases would have incurred fees for

their fire cause-and-origin expert and insurance-industry expert even in the absence

of American Modern's misconduct.   Therefore, I "must leave it alone."   *Haeger*,

137 S. Ct. at 1187.

That is not to say that the Thomases did not incur attorney's fees or other

expenses as a direct result of American Modern's misconduct.   The Thomases

summarize some instances of misconduct in their briefs, and the record corroborates

them.   For example:

- American Modern through its counsel engaged in extensive gamesmanship – bordering on misrepresentations to the Court and to opposing counsel – regarding its settlement with Thiemann Real Estate and the agreement, as part of the settlement, that Thiemann (a defendant) would timely disclose its expert witness, Carl Welcher, before American Modern dismissed its claim against Thiemann.   This collusive agreement was an attempt for American Modern (the plaintiff) to use Welcher as an expert even though its deadline for expert witness disclosure had already passed.   By the time this strategy became clear, the Thomases had not only already deposed American Modern's previously disclosed expert, but had also prepared and designated their own expert, without knowing about Welcher or his testimony. Although this gamesmanship had been going on for weeks if not months, it became apparent at the hearing on February 28, 2017 (when it was admitted by Thiemann's counsel), and led to several motions and briefs involving this witness, including American Modern's motion for new trial filed after the case concluded.

- On May 1, 2017, American Modern's Vice President of Technical Claims, William J. Heeb, verified that "every factual statement" in answers to interrogatories posed by the Thomases were "within his personal knowledge and [were] true and correct."   (ECF 105-13.)   The answers to these interrogatories contained very specific and detailed facts regarding the

Thomases' insurance claim, the Thomases' statements made during the claim investigation, identities of witnesses to the fire and of persons who viewed the fire scene, identities of persons who took photographs of the fire scene, details of the investigation including the purpose of letters sent by American Modern to the Thomases, and detailed information from John Nordyke's and Dan Bruno's fire investigation reports. (*Id.*) However, on October 16, 2018 (the sixth day of trial), Heeb testified under oath before this Court and the jury that he first became aware of the Thomases' insurance claim in January 2018 – eight months after his detailed interrogatory answers. He did not review the claim file before January 2018. Heeb testified that someone else drafted the interrogatory answers and, because he did not have any questions about them, he simply signed the verification. In response to the Thomases' motion for sanctions, American Modern admits, through its outside counsel, that it was outside counsel who prepared the interrogatory answers and forwarded them on to American Modern to be verified. These May 1, 2017, interrogatory answers were the subject of a motion to compel filed by the Thomases that was extensively briefed, heard by the Court, and prompted an *in camera* review of the unredacted claim file.

There are several other examples of discovery abuses and abuse of the judicial process, such as representing to the Court that the claim file had been produced to the Thomases when it in fact had not; improperly asserting a relevancy "privilege" to withhold documents; and expressing resistance to a Court order to produce documents for *in camera* inspection by threating to seek extraordinary appellate relief on legally frivolous grounds. Indeed, at the hearing on the motion to compel in August 2017, I expressed grave concern about the "so many misrepresentations made to me throughout this case" (ECF 128 at p. 23), and especially about production of the claim file.

Given the grave concerns regarding American Modern's representations as to what was in the claim file, what was produced and what was not produced to the

Thomases from the claim file, and whether the asserted privileges were properly invoked, on August 2, 2017, I ordered American Modern to produce the unredacted claim file to me for *in camera* review.   Upon such review, I found that several redactions were not protected by either the attorney-client privilege or the work-product privilege, and I ordered American Modern to produce the non-privileged but previously-withheld portions of the claim file to the Thomases not later than September 18, 2017.   (ECF 134, Order filed Sept. 11, 2017.)   I was very specific about what portions of the file were to be produced.   *Id.* at p. 14. Among the claim-file documents I specifically ordered produced were "Attachment to No. 35: entirety of redaction," "Attachment to No. 36: entirety of redaction," and "Attachment to No. 37: entirety of redaction."   *Id.*

After trial concluded, and in considering this motion for sanctions, I re-reviewed the unredacted claim file American Modern submitted to me in August 2017 for my *in camera* review.   "Attachment to No. 35" is the Manchester Police Department police report.   "Attachment to No. 36" is the entirety of Dan Bruno's fire investigation report.   "Attachment to No. 37" is the entirety of John Nordyke's fire investigation report.   I ordered production of these portions of what was represented to be the claim file because "[i]nvestigative reports are not privileged, even though they may be attached to or discussed in counsel communications." ECF 134 at p. 7 (citing *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981); *State*

*ex rel. Great Am. Ins. Co. v. Smith*, 574 S.W.2d 379, 385 (Mo. banc 1978); *Board of Registration for Healing Arts v. Spinden*, 798 S.W.2d 472, 476 (Mo. Ct. App. 1990)).   However, despite my explicit and clear order to produce these attachments in their entirety to the Thomases as what was represented to be part of the claim file, argument on evidentiary matters immediately before trial began and again during trial shows that American Modern never did.[5]   While the reports themselves were earlier disclosed to the Thomases as part of American Modern's Rule 26 disclosures, they were never produced to the Thomases *as part of the claim file* as I ordered on September 11, 2017.   Accordingly, after September 18, 2017, the Thomases proceeded in this case on the belief that the police reports and Bruno's and Nordyke's fire investigation reports were not part of the claim file.   Whether they were part of the claim file was an important issue on the vexatiousness claim,

---

[5]  *See* 10/4/18 Transcript (Pretrial Conference), ECF 338 at p. 31 – Thomas counsel:   "[T]his kind of goes to one of the biggest issues here today – is when did American Modern know what, and *those police reports were not included in the claim file*.   Opposing counsel – your Honor received the claim file and went through that and made determinations as to privilege, *and they're not in there. . . . [N]one of the police reports are in the claim file*.   *None of the expert reports are in the claim file* except for there is one page or maybe it's two pages where there's just – it looks like a cut and – like an image snip of part of the reports that are in there, but other than that, *there's nothing to indicate that they ever got these reports*[.]"   (Emphasis added.)   *See also* 10/16/18 Transcript (Jury Trial, vol. 6), ECF 345 at pp. 123-24 – American Modern counsel:   "Mr. McGuire will testify that he had a copy of the fire marshal's report in his claim file and that that's part of it, so . . ."   Thomas counsel:   ". . . this goes back to an even bigger problem is that *the reports themselves were never produced to us as part of the claim file*, and we – we brought a motion to compel, to compel everything that was in the claim file, and Your Honor reviewed that in camera.   *These reports were not part of that. . . .*"   The Court:   "But when you asked for the entire claim file, they were not part of it?"   Thomas counsel:   "That's correct, Your Honor."   (Emphasis added.)   American Modern's attorney never disputed counsel's representations to the Court that the reports were not produced as part of the claim file.

especially because of the changing testimony of the American Modern witnesses about what was and what was not in the claim file and what they did or did not rely on in making their determination not to pay the claim.

I could comb through the several-hundred docket entries in this case and pick out line-by-line those events that represent time, work, and expenditures that were incurred by the Court and all counsel in this case because of American Modern's misconduct, misrepresentations, and outright defiance of Court orders; and those would only include those events of which I am aware.[6]   It would not be difficult to draw a line from those events to specific fees and costs incurred by counsel to establish the "but for" link to impose them as sanctions.   But those fees and costs have already been accounted for as time and costs reasonably and necessarily expended because of the circumstances of this case and thus awarded under § 375.420.   In other words, the fees incurred solely because of American Modern's misconduct are subsumed by the fees already awarded under § 375.420 as "a reasonable attorney's fee."

I do not know why American Modern did what it did in this case, but it employed its tactics at its own peril.   Its own conduct created the circumstances that increased the legal fees incurred by the Thomases' counsel throughout the three-year history of the case.   Because those fees were reasonable and necessary in the

---

[6] American Modern's gamesmanship and recalcitrance also caused repeated extensions of the deadlines and schedule in this case, delaying disposition of the action by several months.

circumstances of this case for the reasons discussed above, they are properly assessed against American Modern under § 375.420 and therefore cannot be assessed as sanctions for the misconduct.

Accordingly, while I find that American Modern engaged in serious misconduct warranting sanctions, I cannot invoke my inherent authority to order it to pay the Thomases' expert witness fees as a sanction without the "but for" causation. While this causal link can easily be demonstrated through certain fees incurred by counsel, those fees have already been recompensed with my determination of a reasonable fee award under § 375.420.   Absent that fee award under the Missouri vexatious refusal statute, I would have entered a substantial monetary sanction.   I am, however, obligated to deny the Thomases' motion for sanctions.   I am hopeful that shedding light on the misconduct will alone be sufficient to deter such conduct in the future.

Accordingly,

**IT IS HEREBY ORDERED** that Aaron and Aimee Thomas' Motion for Attorney's Fees, and Pre- and Post-Judgment Interest [305] is granted in part and denied in part.

**IT IS FURTHER ORDERED** that, pursuant to Mo. Rev. Stat. § 375.420, Aaron and Aimee Thomas are awarded a reasonable attorney's fee in the amount of $661,505.00.

**IT IS FURTHER ORDERED** that American Modern Home Insurance Company shall pay to Aaron and Aimee Thomas $7,909.52 in prejudgment interest, which represents interest calculated at the rate of 9% per annum on the Thomases' policy-claim damages, that is, $19,093.74, from March 12, 2014, to the date of judgment, that is, October 17, 2018.

**IT IS FURTHER ORDERED** that American Modern Home Insurance Company shall pay to Aaron and Aimee Thomas post-judgment interest accruing on the total amount of the October 17, 2018, judgment ($21,153.11) from the date of said judgment until satisfaction of judgment, at the rate of 2.67% per annum.

**IT IS FURTHER ORDERED** that American Modern Home Insurance Company shall pay to Aaron and Aimee Thomas post-judgment interest accruing on the amount of prejudgment interest ($7,909.52) from the date of amended judgment until satisfaction of judgment, at the rate prescribed under 28 U.S.C. § 1961.

**IT IS FURTHER ORDERED** that the Thomases' Motion for Sanctions [285] is denied.

An amended judgment incorporating these rulings is entered herewith.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 22nd day of August, 2019.